SIGNED THIS: March 5, 2015

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 14-70979 |
| ERIC TODD CURRY and | ) | |
| TAMMY RENEE CURRY, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

# O P I N I O N

Before the Court is the Debtors' First Amended Chapter 13 Plan. The Chapter 13 Trustee objects to confirmation, in part, because the Debtors propose to treat a consolidated student loan subject to income-based repayment terms as an executory contract. The Trustee asserts that the student loan obligation is not executory in nature and cannot be assumed and separately treated. For the reasons set forth herein, the Trustee's objection to confirmation of the Debtors' First Amended Chapter 13 Plan will be sustained.

## I. Factual and Procedural Background

Eric Todd Curry and Tammy Renee Curry ("Debtors") filed their joint voluntary petition under Chapter 13 of the Bankruptcy Code on May 27, 2014. On their Schedule F, the Debtors listed a total of $110,539.60 in unsecured nonpriority debt. That amount included a $73,212.95 debt for "2007 and 2008 Educational Loan - Consolidated Loans" owed by Mrs. Curry to the "Dept. of Education/NELNET." FedLoan Servicing and Sallie Mae also were scheduled to receive "NOTICE ONLY." On Schedule G - Executory Contracts and Unexpired Leases, the Debtors listed FedLoan Servicing as being party to an executory contract with the Debtors and described the contract as "Income Based Repayment Plan. Starts June 2014 for 25 years at 191.08 per month. Monthly payment is recalculated annually." FedLoan Servicing filed a proof of claim in the amount of $73,737.52 for "student loan debt." Attached to the claim was a letter stating that copies of the underlying loan documents were not included because they were never provided by the originating lender.

In their initial Chapter 13 Plan ("Plan"), the Debtors proposed to assume their alleged executory contract with FedLoan Servicing. The Plan provided for the Debtors to maintain monthly payments of $191.08 and noted that 300 payments remained due under the contract. In their First Amended Plan ("Amended Plan") filed in September 2014, the Debtors again provided for payments on the executory contract with "Fed Loan Servicing (Dept of Education)," but lowered the monthly payment amount to "$0.00." At the same time, the Debtors filed an Amended Schedule I, reporting post-filing changes in the monthly income of both

Debtors resulting in a net decrease in household income of $1218.17 per month.

The Chapter 13 Trustee ("Trustee") objected to the Amended Plan questioning the reduction in the monthly payment amount to FedLoan Servicing because "there was no change in income per the Amended Schedule I." The Trustee requested proof that no payments to FedLoan Servicing were being made or were required to be made. The Trustee also objected to the treatment of the obligation as executory, asserting that a note with Income-Based Repayment ("IBR") terms is not an executory contract. The Trustee asserted that if payments were being made or were required to be made under the IBR terms, separate treatment of the obligation would result in unfair discrimination against other unsecured creditors.

The Debtors responded by denying that there was no change in income, citing the overall decrease of $1218.17 in the Debtors' combined net income shown on their Amended Schedule I. They further declared that they were not making payments to FedLoan Servicing and that their account had been automatically placed in "bankruptcy forbearance" for the pendency of their Chapter 13 case. The Debtors argued that the IBR terms in the consolidation loan documents created an executory contract that can be assumed in a Chapter 13 plan. The Debtors clarified that they want to remove the consolidated student loans from forbearance status and resume repayment in accordance with the IBR terms. They stated that their projected IBR monthly payment under their current circumstances would be $23. The Trustee replied, arguing that the repayment obligation created by the IBR terms is not executory, and the simple appearance

of mutual obligations does not make it executory. Both parties were requested to brief the legal issues presented by the Debtors' classification of Mrs. Curry's student loan obligations being paid under IBR terms as executory.

The Debtors filed a memorandum of authority that included a statement of facts and the attachment of supporting documents. According to the Debtors, Mrs. Curry obtained several student loans between 2007 and 2010. The loans were later consolidated into two new loans,[1] owned by the Department of Education and serviced by FedLoan Servicing. Mrs. Curry elected to participate in the IBR option offered by the Department of Education, which generally provides for loan payments to be based on income, recalculated annually, and forgiveness of any remaining balance due after twenty-five years of payments. The Debtors attached a sample Master Promissory Note which included the terms of the IBR option. The Debtors also attached additional correspondence from FedLoan Servicing dated April 22, 2014, acknowledging Mrs. Curry's IBR election and directing her to pay $191.08 per month for the first year under the IBR Plan, beginning June 10, 2014.

Notwithstanding the payment amount set forth in the April 22nd letter, the Debtors maintain that their current monthly payment under Mrs. Curry's IBR

---

[1] The parties refer to the two consolidated loans collectively as though they were part of a single transaction. Although copies of the actual consolidation loan documents have not been provided, it appears that Mrs. Curry's payment installments are calculated as a single monthly obligation. While it is unclear whether each consolidation loan is evidenced by a separate contract or note with an IBR option, the Court will proceed under the assumption that there is only one contract or note, subject to a single set of IBR terms. The decision of whether the inclusion of IBR terms in a note makes the obligation executory will be the same regardless of how many separate notes exist.

election based on their changed circumstances would be $23. They calculated that amount using the "Repayment Estimator" and a downloadable information packet for borrowers from the Federal Student Aid website. The Debtors argue that Mrs. Curry's election of the IBR terms created an executory contract because it resulted in both parties having obligations that have yet to be performed. Specifically, the Debtors argue that they must comply with the repayment terms of the IBR option, and FedLoan Servicing must forgive any loan balance after the Debtors make the required payments. The Debtors claim that these mutual obligations are significant and make the contract executory.

In his memorandum, the Trustee does not dispute the Debtors' statement of facts or their general explanation of how the IBR option works. Rather, the Trustee argues that the IBR terms are not set forth in a separate contract distinct from the loan consolidation note. Instead, the Trustee asserts that the IBR terms simply provide an alternative repayment method for the original obligation. Additionally, the Trustee argues that the only significant remaining obligation under the note and the IBR terms is Mrs. Curry's promise to repay the loans. The Trustee claims that any breach resulting from the failure to perform on the part of FedLoan Servicing would not be material and would not excuse performance by the Debtors.

Because there are no factual disputes, an evidentiary hearing was not requested or required. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. Matters concerning the administration of the estate and confirmation of plans or affecting the debtor-creditor relationship are core proceedings. 28 U.S.C. §157(b)(2)(A), (L), (O).

## III. Legal Analysis

Section 1322 generally governs the contents of Chapter 13 plans. 11 U.S.C. §1322. Section 1322 identifies what must be included and what is prohibited, but also lists provisions that a debtor may choose to include in a Chapter 13 plan. *Id.* Among those discretionary provisions, §1322(b)(7) allows the assumption, rejection, or assignment of executory contracts. 11 U.S.C. §1322(b)(7). Section 365 provides the specific authority for assuming, rejecting, and assigning executory contracts. 11 U.S.C. §365. In their Amended Plan, the Debtors seek to assume the loan contract and participation in the IBR option for repayment of Mrs. Curry's consolidated student loans to FedLoan Servicing. The Debtors want to remove the loans from forbearance status and continue to make qualifying payments to be credited toward the amount required for the loans to eventually be eligible for forgiveness.

Although the Code provides that debtors may assume executory contracts, it does not define what an executory contract is. *In re Crippin*, 877 F.2d 594, 596 (7th Cir. 1989); *In re Streets & Beard Farm P'ship*, 882 F.2d 233, 235 (7th Cir. 1989). The Seventh Circuit follows the widely adopted "Countryman" definition of an executory contract. *Crippin*, 877 F.2d at 596. Under this definition, an

executory contract is one where "the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *In re Chicago, Rock Island & Pacific R.R. Co.*, 604 F.2d 1002, 1004 (7th Cir. 1979) (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973)). More specifically, the Seventh Circuit has construed the definition of executory contracts and limited the application of §365 to "contracts where significant unperformed obligations remain on both sides." *Streets & Beard Farm P'ship*, 882 F.2d at 235. Stated another way, "a contract is executory if each party is burdened with obligations which if not performed would amount to a material breach." *Dick ex rel. Amended Hilbert Residence Maint. Trust v. Conseco, Inc.*, 458 F.3d 573, 578 (7th Cir. 2006).

The parties do not dispute that Mrs. Curry's loans are direct consolidation loans made by the Department of Education, the terms of which provide for an IBR option. The William D. Ford Federal Direct Loan Program, administered by the Department of Education, provides financial assistance to higher education students in the form of loans made by or on behalf of the federal government. 20 U.S.C. §1087a *et seq.* As part of the program, and consistent with the regulations established by the Secretary of the Department of Education ("Secretary"), borrowers are entitled to choose their method of repayment from a variety of payment options, including the IBR option. 20 U.S.C. §§1087e(d)(1)(E), 1098e; 34 C.F.R. §§685.208(a)(2), 685.210, 685.221. A borrower is generally asked to make a written election of a payment option at the outset, but the election may be made

at other times or changed with certain restrictions. 34 C.F.R. §685.210.

A borrower is eligible to elect participation in the IBR option at any time a partial financial hardship exists, meaning that the borrower's monthly obligation under the standard repayment terms exceeds the amount which would be paid monthly under the IBR option. 20 U.S.C. §1098e(a)(3), (b)(1); 34 C.F.R. §685.221(a), (b). A borrower's monthly obligation under the IBR option is determined by a calculation involving the borrower's adjusted gross income as reported to the IRS, family size, and the poverty guidelines set forth by the U.S. Department of Health and Human Services. *Id.* The calculation is made annually by the Secretary and requires documentation to be provided by the borrower. 20 U.S.C. §1098e(c); 34 C.F.R. §685.221(e)(1). If it is subsequently determined that the partial financial hardship no longer exists, a borrower may nonetheless remain in the IBR option but the Secretary will recalculate the monthly payment according to standard repayment terms. 34 C.F.R. §685.221(d)(1). Likewise, failure to provide the necessary annual documentation results in a determination that a partial financial hardship no longer exists, and monthly payments are recalculated accordingly. 34 C.F.R. §685.221(d), (e)(7).

Under the IBR option, borrowers can qualify for loan forgiveness after twenty-five years. Borrowers who have participated in an IBR option at any time qualify for forgiveness by either making the monthly payments as required each year for the applicable loan forgiveness period, or by making the equivalent of twenty-five years of payments. 34 C.F.R. §685.221(f).

The Debtors claim that the IBR option available to Mrs. Curry through her

consolidation loan created an executory contract, but no copies of the actual contract or consolidation loan documents have been provided. FedLoan Servicing's claim states that it does not have copies of the loan documents. The Debtors have provided a copy of a sample Master Promissory Note ("Master Note") which they consistently refer to in the discussion of the IBR terms in their brief. The Trustee has not questioned whether the Master Note accurately reflects the terms of Mrs. Curry's obligations. To the contrary, he also relies on the Master Note in his arguments. Accordingly, this Court will assume for purposes of this Opinion that the Master Note does, in fact, accurately set forth the terms of Mrs. Curry's student loans, and that Mrs. Curry has signed a document in substantially the same form as the Master Note even though that document has not been produced.

The Master Note contains standard loan provisions including the borrower's promise to pay and lengthy details about a variety of matters including limits on the use of borrowed funds, interest calculations, and repayment terms. With respect to repayment terms, the Master Note provides that loans may be repaid under standard terms or under other optional plans such as the IBR plan, the "Pay As You Earn Plan," or the "Income Contingent Repayment Plan." The details of and the qualifications for participating in each optional repayment plan are set forth in the Master Note, and the guidelines for making an election to proceed under the optional repayment plans are also provided. The inclusion of the optional repayment plans in the Master Note is consistent with the statutory mandate that such optional plans be offered to student loan borrowers. 20 U.S.C. §1087e(d)(1).

Whether the Master Note which includes the IBR terms can be considered an executory contract must be determined in view of the overall loan transaction. *See Crippin*, 877 F.2d at 597-98; *In re Texstone Venture, Ltd.*, 54 B.R. 54, 55-56 (Bankr. S.D. Tex. 1985). Here, the ability of Mrs. Curry to elect to make payments under the IBR option was part of her loan consolidation transaction. It is not a separate agreement or a separate loan modification. And even if the IBR election was found in a separate document, the transaction would still be construed as a whole. *Texstone Venture, Ltd.*, 54 B.R. at 56-57; *see also In re EES Lambert Assocs.*, 62 B.R. 328, 336 (Bankr. N.D. Ill. 1986) (promissory note, mortgage, and regulatory agreement were all part of one transaction and must be considered together).

The IBR option is merely an alternative method available to Mrs. Curry to repay her educational loans. The transaction at issue here involves the refinancing of Mrs. Curry's original student loans by consolidating them into two new loans. 34 C.F.R. §685.220(a). Her primary obligation under the consolidated loan contract is repayment. That obligation can be satisfied through a number of available repayment options, including the IBR option she elected. Generally, where the only obligation that remains unsatisfied under the terms of a contract is the repayment of money, the contract is not executory. *In re Murtishi*, 55 B.R. 564, 569 (Bankr. N.D. Ill. 1985). And the mere existence of alternative repayment options does not change the basic character of a transaction so as to transform it into an executory contract. *See Texstone Venture, Ltd.*, 54 B.R. at 56; *In re Cox*, 179 B.R. 495, 498-99 (Bankr. N.D. Tex. 1995) (various options available to

borrower in satisfying balloon payment are simply alternative repayment methods); *In re Crummie*, 194 B.R. 230, 233-34 (Bankr. N.D. Cal. 1996) (options for satisfying balloon payment, the procedures for which are set forth in the contract and require some cooperation or monitoring by the creditor, are merely alternative methods of repayment).

Mrs. Curry still has her payment obligation to perform. Her lender, on the other hand, has already performed all of its significant obligations. Its primary obligation was to provide financing, which was fulfilled at or near the time the contract was executed. Additionally, the lender was required to provide the statutory repayment options to Mrs. Curry. As there is no dispute that such provisions were included in the documents, performance of that obligation was satisfied at the time the documents were executed. Of course, FedLoan Servicing, as the current servicing agent, has the continuing duty to accept payments from Mrs. Curry made pursuant to IBR terms. 20 U.S.C. §1087f(b). And FedLoan Servicing has an obligation to review Mrs. Curry's income and IBR payments annually throughout the repayment period, and to discharge her debt upon determination that she has satisfied the repayment terms of her loans.[2] But these obligations are ministerial and not significant enough to render the loan contract

---

[2] The regulations provide for performance of these duties by the Secretary, but §1087f(b) authorizes the Secretary to enter into agreements regarding the servicing of loans and other aspects of the direct student loan program. Without seeing the servicing agreement between the Secretary and FedLoan Servicing, the Court cannot be certain of its terms. But in the letters provided by the Debtors, FedLoan Servicing at least appears to have been assigned these obligations. Ultimately, it does not matter whether the obligations are owed to Mrs. Curry by the Secretary or FedLoan Servicing. The only question is whether the obligations are significant.

executory. *See Streets & Beard Farm P'ship*, 882 F.2d at 235 (under Illinois law, obligation to deliver legal title to buyer upon completion of payments under an installment land contract "is a mere formality and does not represent the kind of significant obligation that would render the contract executory"); *In re Conseco, Inc.*, 2005 WL 2737507, at *5-6 (N.D. Ill. Oct. 18, 2005) (obligation of trust to cooperate is an administrative duty, not a material obligation under Indiana law, and thus not executory), *aff'd sub nom. Dick ex rel. Amended Hilbert Residence Maint. Trust v. Conseco, Inc.*, 458 F.3d 573 (7th Cir. 2006); *Sparks v. Sparks (In re Sparks)*, 206 B.R. 481, 488-89 (Bankr. N.D. Ill. 1997) (ex-spouse's remaining obligation to execute transfer documents was not so material as to make an antenuptial agreement executory).

The duty to take actions necessary to effectuate the terms of a contract upon fulfillment of repayment terms can create the appearance of mutually unperformed obligations. But viewed as a whole, the transaction here simply involves a contract for the repayment of loans with alternative methods of repayment. *See Cox*, 179 B.R. at 498 (providing options for repayment does not make contract executory); *Texstone Venture, Ltd.*, 54 B.R. at 56 (because option agreement is merely an alternative method of principal repayment, neither the option itself nor the note that includes the option would be an executory contract). Mrs. Curry's student loan obligation evidenced by the Master Note containing several repayment options is not an executory contract.

## IV. Conclusion

Mrs. Curry's student loan consolidation created a contract for the repayment of her loans that includes alternative methods of repayment. Because the only significant obligation under her consolidation note is the repayment of the money Mrs. Curry borrowed, the contract is not executory and cannot be treated as such under the Debtors' Amended Plan. Therefore, the Trustee's objection to confirmation of the Debtors' Amended Plan must be sustained, and confirmation of the First Amended Chapter 13 Plan must be denied.

In their filings, both the Debtors and the Trustee briefly discussed whether the student loan obligation being paid by the Debtors pursuant to IBR terms could be treated as general unsecured debt but classified and paid separately from other unsecured debt. The Court does not reach that issue because no plan proposing such treatment has been filed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###